Richard Simmons, counsel for Robert F. Anderson, Chapter 7 trustee for the estate of Susan Patricia Pfister, and with the Court's permission, I reserve four minutes for rebuttal. Your Honors, the debtor must be just before he is generous. The trustee asked this Court to reverse the district court in its entirety and to reinstate the judgment of the bankruptcy court for the following four reasons. Resulting trust for the benefit of the appellee is not proper in this case. The debtor transferred an undivided full one-half interest in her property on December 31, 2008 to the appellee. Bankruptcy court correctly determined that the transfer was constructively fraudulent. Is it true under South Carolina law that when one person or one entity purchases property but is deeded in the name of the other, that a resulting trust is a presumption of a resulting trust? Yes, Your Honor. In this case, did one entity pay for the property and was it titled in the bankrupt's name? Well, Your Honor, yes, under… Is that correct? Well, it is. There was no down, Judge Hedges. There was no down payment made. I'll ask you that. Correct. Did one entity purchase the property? Because I couldn't find that specifically in this record. Did our potential class purchase the property? Who purchased the property? I mean paid money for it. Yes, Your Honor. Who was it under this record? I'm asking you. On May 10, 2001, our potential class took out a loan for $5,000. Do you know from this record who paid the money for the property? Our potential class. Okay. And it was deeded at least in part in the bankrupt's name, correct? That's correct. That creates a presumption of a resulting trust under South Carolina law, is that correct? It does, yes, Your Honor. And so then you would have to rebut that presumption. That's correct. What is your strongest evidence to rebut that presumption? Well, Your Honor, the actual intent of the parties may be rebutted by parole evidence. I know all that. I said, what's your strongest evidence to rebut it? Well, in this case, the bankruptcy court found, Your Honor, and it stated on… I didn't ask what they found. I'm asking you what the evidence in the record, the strongest evidence in the record to rebut that is, what? Well, the party's intent on the purchase date was that the debtor and her husband were both jointly on the property. Well, that's the conclusion. What's the evidence of that? Well, the evidence, Your Honor, would be that there was a plat that was put into Architectural Glass's name on January 19th. Well, that's not evidence in your behalf. Well, no, but it does go to show that on the purchase date, May 10th of 2001, there's a change in intent. And it's in the record, it's testimony, Your Honor, that the property was titled in… Let's do it this way. Rather than argue what intent is, let's talk about the operative facts. Right. That's right. And the facts that you would point to in this record – I'm not arguing with you. I'm just trying to get the record straight. Yes, Your Honor. One would be that the property is actually deeded in her name? That's correct. But that doesn't rebut anything, does it? Because that's required under resulting trust, isn't it? Yes, Your Honor. So what other evidence is there? Well, there's no definite, unequivocal, clear, and convincing proof that Architectural Glass wanted to own the property. Because if it had wanted to own the property, it would have deeded the property into its own name rather on the purchase date. The resulting trust is deeded in another person's name, correct? Correct. So the fact that it's deeded in her name, that's not supportive of anything, is it? Well, I would argue that there's no evidence in the record showing that at any point in the future did Architectural Glass actually want to own the property. It was the intent of the parties that they would use the property on the purchase date on May 10, 2001. But it was not the intent that they would own the property. But they don't have to show evidence to rebut the presumption. You have to show evidence to rebut the presumption. If there's no evidence, don't they win because the presumption is for a resulting trust? But, Your Honor, there is evidence. The bankruptcy court found as a finding of fact, and it wasn't plain error, that on the purchase date, the intent of the parties is what the court must assess. And on the purchase date, it was the intent, after receiving advice from the debtor and her husband's CPA, that the property for... And what's the strongest underlying evidence for the bankruptcy court to reach that conclusion then? It's the testimony and joint appendix, Your Honor. Is that the CPA's advice? It was. The debtor and the husband testified... The advice of the CPA? Yes, Your Honor. The CPA told them they needed to put it in their own names and have the company rent from them. Yes, Your Honor. And that on the purchase date is what must be assessed, not before or after. That's what they did on the purchase date. Correct. And that's what rebuts the presumption of resulting trust. Doesn't that just go to who owns the title? I mean, who has the title in their name? That doesn't really go to ownership, does it? Well, I think it does, Your Honor. It was titled in their name. And they treated this as... Although the corporation didn't pay rent, the debtor and the husband still treated this as though it was the same scenario. And it was similar as the bankruptcy... No, no, no. Wait, wait, wait, wait, wait. What do you mean they treated it as the same scenario? They didn't... The corporation never paid rent. Right. They never paid rent. They paid the mortgage, the title... They paid for it as if it was their property. Right. But they did not intend on the purchase date, which is what this court must assess, that there's no agreement in the record... Listen, I just want to take you back. Your evidence is that on the purchase date, it was dated in the name of the bankrupt. Correct. And some evidence that the... Evidence that the CPA said if you set it up this way, you can have these tax advantages. Correct. Is there anything that indicates the CPA says actual ownership of the property has to change hands? Or just if you title this this way, I'm advising you, you can take advantage of the tax code. I think it was likely the latter, Your Honor. Now, I don't say likely. I'm just saying, is there any evidence to make that distinction? I can't find any.  I don't have any evidence in the record. But the record does state, and if you look at Joint Appendix, page 1261, the question, why was... Tell the court, why was the business... Why did you put your name on the deed while it was individually your name and your husband's name? And the answer of the debtor on cross-examination was, I believe our CPA at the time recommended it for tax reasons. Right, but that doesn't mean that it was... That the actual ownership was changed at all. It was just that on that date, the title reflected as if they owned it. Correct? I wouldn't necessarily agree with that, Your Honor. I would think that... But what evidence do you have that it's one or the other? What evidence is that the CPA said it's a requirement that you actually own the property rather than just title it that way? Well, if that were the case, they would have titled it in the name of architectural glass. No, no, no, no, no, no, no, no, no. If the CPA says, title it this way, you can get tax advantages. That's not the same as saying shift ownership as reflected in the title, is it? I think it is, Your Honor. Based on what is it? I think that based on... Let me ask you this much. Based on anything in this record, can you make that statement? Well, Your Honor, again, I just... Can you point to anything in the record that indicates, even if they were following the advice of the CPA, that that advice entailed giving up ownership of the property rather than just titling it in some way? Well, you have to look at the intent of the parties on the purchase date. I know you keep saying that. I'm asking you what the evidence is on that date. Well, I think the evidence on that date is the debtor's testimony or husband's testimony that it was titled in their name, such that if you look at the scenario, if, in fact, they had paid... If, in fact, the appellee had paid rent as was planned, that couldn't have happened if it was titled in its own name. They were going to take benefit on that purchase date. That explains why you would title it differently, but I don't see how that necessarily reflects actual ownership. I think the title and the ownership have a great correlation there. But not in a resulting trust. I think so, Your Honor. No, they don't in a resulting trust. It's just the opposite, that the title doesn't reflect ownership. I understand what you're saying, and then we have to... It is the trustee's position then to rebut that, and you rebut that by looking at the party's actual intent on the purchase date. Right. And it wasn't... The bankruptcy court had a trial? It did, yes, Your Honor. How long did it last? Two days, Your Honor. How many witnesses testified? There were, I believe, six witnesses, Your Honor. And then the bankruptcy court made findings of fact and conclusions of law? That's correct, Your Honor. Yes, sir. We need to rely on the findings of fact because they're not clearly erroneous. That's correct, Your Honor. The evidence is not... The other side has to show they're clear of error. Correct, which is a very high burden to meet as to facts. This isn't a de novo review. And the district court didn't make any findings of fact. The district court adopted, in part, the bankruptcy court's findings of fact, including... But the district court didn't make any findings of fact. Well, it didn't make any... It wasn't entitled to make any findings of fact because it didn't have a trial. Correct, Your Honor. It was acting as we are. It was an appellate court. Correct, Your Honor. And so it also recognized it would be plain error. The standard is plain error when you're assessing the facts as found by the trial court. And so... Plain error or clear error? Well, it would be clear error, Your Honor. It would be clear error. And so... Clear error has another meaning up here. We hear a lot about that, too. Yes, Your Honor. And in applying the clear error standard, the bankruptcy court found and the district court similarly found and adopted that... And this is Joint Appendix 1039, Paragraph 4, Bankruptcy Court Order and District Court Order, Joint Appendix 1637, Paragraph 4. Let me ask you this about the bankruptcy order. And I'm looking at Joint Appendix 1045. In the first paragraph, the evidence does not support any finding of fraud, bad faith mistake, or anything of a similar nature with regard to debtor and fisher's ownership of the property. In this sentence, the property was placed in and remained titled in both of their names intentionally. That doesn't have any bearing whatsoever on the resulting trust, does it? Because isn't in every resulting trust the property is placed in the other title holder's name intentionally? I'm just asking you. Isn't that a legal matter? Isn't that correct? Well, as a legal matter, Your Honor, in... The fact that the property... I'm just focusing on this one sentence. The property was placed in and remained titled in both of their names intentionally. That doesn't add anything to our discussion or conclusion as to whether or not there should or should not be a resulting trust, right? I wouldn't necessarily agree with that statement. Explain it. Explain it. Why? It has any bearing. Well, while that is, the court notes the property was placed in. That's of particular importance. It was placed in both of their names intentionally. That goes to the party's intent. No, it doesn't. It goes to placing it in their names. And isn't that what happens under the resulting trust in South Carolina when property is purchased by one party but deeded in the name of another? That's all done intentionally, isn't it? Well, Your Honor, the... I'm asking this very... Don't go back to the same answer. I'm asking a very specific question. The fact that the property was deeded in the name of someone else in no way defeats the theory of a resulting trust, does it? Just the fact that it was placed in their name intentionally? Well... Otherwise, resulting trust only happens when somebody mistakenly puts the property in somebody else's name. But, Your Honor, I think that what I'm trying to convey in the present moment... I know, but I'm trying to get you to answer my question. Well, I think it was based... I think that has importance and the Bankruptcy Court didn't go further to apply the facts that it found in that case, but it was intentionally... Since you can't answer that, let's go to the next sentence. All parties knew that the loans were made to defendants and secured by the property. It was... The next sentence, too. It was no secret or mistake that the defendant paid the mortgages and approved the property. You agree with all that, don't you? I do. Yes, Your Honor. In the next sentence, her entire legal justification is there is no justification for a resulting trust. When I read that, I thought she meant a resulting trust somehow in favor of the debtor. Doesn't that language... doesn't that seem odd? What does it mean that the information before that all parties knew the defendant made the loans and paid the mortgages? Why would it... why wouldn't that be evidence at least to be considered? Why is that no justification? I don't understand that sentence. There is no justification for a resulting trust. Does that sentence have anything to do with the previous two sentences? Well, I think it just goes to show that... so there were... this property was remortgaged five or six times. And I think what she's... the bankruptcy court is trying to get to there is that the fact that they had the opportunity each time between 2001 and 2004 when that property was remortgaged to change ownership, and that never happened, it intentionally remained in their names. That would have been another instance where I think that a resulting trust could have arisen perhaps with each time that a new subsequent transaction occurred. But you can't look at... you know, it's to the purchase date, May 10 of 2001. Laracy v. Laracy provides that subsequent transactions, changes of intent or circumstances cannot be evaluated for imposing a result. I've been ripped to your argument with a lot of questions. I'll let you make the argument. Anything else you wanted to make? But thank you for answering my questions. Yes, your honor. Thank you, Judge Shedd. I'd also like to note that the district court erred for three reasons in imposing a resulting trust in this case. And to the extent I don't reach all these reasons in the rest of my arguments, I'll rely on my briefs and on my rebuttal to address them. The district court assessed the party's intent before and after May 10, 2001, which, as I said, under Laracy v. Laracy, under South Carolina law... Can't that be evidence, so can't actions before and after be evidence of the intent on a given date? Not in this case, your honor. Not in this case? Correct. On January 19... I'm not adding you as a general principle. Can't behavior before and after... can it sometimes be used as evidence of intent? I would agree that it can. In this particular... You didn't want to use this. Well, in this particular case, the facts do not, in the record, do not indicate that that's necessarily what you're surmising is the case. January 19, 2001, there was an executory contract for sale in the name of architectural glass. And there was also a plat April 11, 2001... That was all replaced by a contract signed by the debtor, right? Correct. Well, I don't know if there was a contract signed by the debtor in the record. He did not sign a contract on this property. A contract for sale? Any kind of contract. Well, they signed a deed, your honor. Is that a contract? It's a record of title. And, yes, there was $10 consideration exchanged in this area. A deed is a contract? Well, there was a title... there was a conveyance of title for $10. Let me ask you again. Did she ever sign any contract on this property at all? Apart from the deed, no, your honor. Well, there were contracts signed on this, actually. They were mortgages because the title was in her name. So each mortgage that was taken out from 2001 to 2000... There were several mortgages, weren't there? There were. There was one after the property was transferred, which is how the bankruptcy court properly assessed the value of the debtor's interest in the property. You say her intent. Whose intent is to be judged at the date of the purchase? Well, under Laresy, which is the 1913 case, it's the payor's intent. But it's actually... Sorry. Under Laresy v. Laresy, Judge Motz, in 1913, it's the payor's intent that has to be judged. But there are later cases, in Ray Prince, for instance, that say it's the actual intent of the parties collectively. So it's the parties that you would need to assess. It's their intent on the purchase. All right. Let's talk about that. Let's just say first, if it's the intent of the purchaser, then we would look at the intent of Architectural Glass. Is that correct? That's correct. Okay. If we were to look at her, and is there any indication in the record anywhere, direct evidence, direct evidence, that the company did anything other than they planned to own it the whole time? They paid... They did everything indicative of that. They paid all the bills. They paid the mortgage. They did all of that. Correct? Correct. Did she contribute at all herself to any payments of any bill about the property? There's one instance where there's a $1,000 repayment from Architectural Glass to the appellee as a reimbursement. But there's no instance... Was that the $1,300 payment or not so? That's the $1,000 payment. $1,000 of $1,300 because there was a draw too now made payable to her. Correct. Is that the same thing? There were several draws. It may be. But she never paid out of her own pocket and was not reimbursed. I don't believe there's evidence to that effect. And what is the evidence on why she signed the deed that you are hanging your hat on? What's the evidence of why she said she signed that deed or why anybody said she signed it? Well, it was her testimony at trial on February 14, 2012, that the property was intended for tax purposes. I said why she signed the deed. Why she signed the deed. In the testimony, she did it because her husband told her to do it. Isn't that the testimony? The testimony is... Is that not the testimony? Well, to an effect, that is the testimony, Your Honor. But I see my time has expired. If I may just quickly wrap up that one point that I was making. It's the party's intent and the district court's error. The district court relied on the plat of April 11, 2001 and on subsequent improvements in the loans, the seven subsequent mortgages that Judge King addressed. When you say the district court, you mean the bankruptcy court? No, I mean the district court, Judge Motz. In assessing that a resulting trust should be imposed, it impermissibly looked at prior to the purchase date and after the purchase date. It looked at evidence it shouldn't have looked at. That's correct. The district court did. That's correct, Jessica. I don't know that you've had a chance to keep sort of echoing case names and the end of your argument, the conclusion, but what are the facts that best support your argument? Yes, Your Honor. The facts that best support the argument are that on the purchase date, the intent of the parties changed from what it had been prior to, such that the parties, in effect, could receive better tax treatment than would have been otherwise received if it was owned, if the property at issue was owned in Architectural Glass's name. And I guess implicit in what you're saying and indirectly contrary to what seems to be questions coming to you from the court is that this change in tax, this tax advantage had to go along and be with an ownership change. Correct. Yes, Your Honor. The tax advantages that were intended at that time would not have occurred, and whether they did, in fact, occur or not is immaterial as a bankruptcy court noted because it's a substantive. But they couldn't have occurred without a change in who owned it. That's correct. Yes, Your Honor. And where do we know that from? Well, it was... Where do we know that, that title alone might not afford tax advantages? Where is that in the record? It was the impetus for the parties to change their intent. What's the CPA advising them to do? Isn't that right? Yes, Your Honor. The underlying question is, did the CPA just say you have to change this title and you don't need to really change ownership? Is there any evidence about that? Well, looking at the record and looking at the testimony, Mr. Pfister's affidavit, what Mr. Pfister says and what the debtor corroborates is that but for a change in title, those tax advantages would not have occurred. So when we've been talking to you about pieces of the record before, it was testimony, but now you're relying on this affidavit, right? I thought he testified at the hearing. That corroborates Mr. Pfister's... Well, where's the affidavit? The affidavit was introduced into evidence? It was not, Your Honor. What's the affidavit got to do with it? It just simply corroborates it was not introduced into evidence. If somebody testifies, you use what they say, don't you? That's correct, Your Honor. Okay, so what Judge Shenke is saying to you is that all the CPA said was to put title in your name, and that isn't all she wrote here. So are we just supposed to know that it's a matter of law that you need to actually own the property in order to get the tax benefit, that you can't have a naked title? Well, I don't think that's a necessary determination in this case. What is the evidence that you wanted to actually do more than transfer a naked title? Can I say this? I want to make it clear. I'm not suggesting that it's not in the record. I'm asking you, is it in the record? I didn't find it in the record. I'm not saying that it's not in the record. I just don't see it in the record. Right, Judge Shenke, you're asking if we have anything in the record with Mr. Pfister's CPA saying... Anything other than a change. Anything in the record to indicate a change in title necessarily meant a change in ownership. The record other than the debtor and her husband's testimony does not reflect that. Okay, but let's go to the debtor's and her husband's testimony. Yes, Your Honor. And where in that does it say that the ownership is changing? I mean, maybe you... I'm not sure that this is right, that Title X is here is not enough, but you seem to me to say that the record says more than maybe it does say. Okay, I will point to Joint Appendix 1354 and the line 9. The testimony of Mrs. Pfister is that, okay, but at that point in time for tax, or the question rather is, okay, but at that point in time for tax, you testified your testimony is for tax advantages. The decision was made to put the names in, the deed and the individual's names, correct? Okay, and so that is testimony there that goes to say that I believe what you're asking for, why was the property titled as it was. And there's another instance. I just want to be sure you understand what it is that is at issue. Yes, Your Honor. The suggestion is made that it's just putting it... CPA might have just said put it in your name, but you're not going to be transferring ownership. Right. There's no testimony in the record from trial to that effect, Your Honor. No, but is there testimony that you're doing when you're putting in your name, you are transferring ownership, or not maybe in those words, but implicitly. And you're saying the decision was named to put the names in, the deed and the individual's name. Now maybe that doesn't, right? Correct. And then what else do you have to offer to us? Well, in just further testimony to that effect, I would also point you to Joint Appendix page 1261. 1251? 1261, Your Honor. And who's that? That is the debtor on cross-examination. What did she say? The question was why was the court, it's not quite, the question is not quite clear. Why was, tell the court why was the business, why did you put your name on the deed, why was it individually your name and your husband's name? And the answer was I believe our CPA at the time recommended it for tax reasons. Did it for tax reasons? Yes, Your Honor. And the district judge, or the bankruptcy judge, the finding on that is laid out in number four of the findings of fact on 1039. Is that right? That's correct, Your Honor. She said based on the advice of their accountant, the property was titled and owned in debtor's and Fister's individual names. Fister testified that he and debtor were advised that defendant could pay rent for use of the property and debtor and Fister could receive tax advantages from this arrangement. That's correct, Your Honor. And that's a finding. Is that supported by the record? Yes, that is supported, I believe, to the extent I understand your question, I believe that's supported by the record. That's a simple question. If that's supported by the record, actually yes or no, if it's not supported by the record, then if it's a clear error, the underpinnings of your case fall away. I understand, Your Honor. It seems to me that's what it comes down to. Maybe there's something else that's involved here, but that's pretty much what it comes down to. That's really what's at issue, Your Honor. Do you agree with that? Finding of fact number four is supported by the record and whether it survives clear error review. Yes, Judge King. And the only evidence in that finding for owned is the title. The title and the testimony to the effect that title was changed from the previous intention. Does that have to do anything with ownership, I'm just saying? Well, you also have on 1353, Mr. Feister, tell the court what reason, what reason did you or did your wife, what reason, what reason did you come to put this deed in the name of individual names for you and your wife? If you instructed me, that would be in my interest for tax purposes. So in the other page, we also have deed, and deed often usually reflects ownership. Yes, Your Honor, I would agree, and that's the trustee's position in this case. I looked at page 1261. That's a cross-examination of the debtor, is it? Yes. That's what he said, yes. Is that correct? I'm looking at line 18. Whose property did you consider this to be? And she says architectural glass. That's correct, Your Honor. Is that evidence of what she thought? Well, Your Honor, the bankruptcy court heard this testimony. It weighed the evidence and questioned her credibility. When did she question that? I thought she believed everything she said. Didn't she say this is evidence of after the fact? Yes, Your Honor. Before or after, but not at the date. That's correct. This is later self-serving testimony. If you look at Joint Appendix page 1562, Your Honor. 1562? Correct, Judge King. The court noted that I had a little bit of credibility problem when her testimony of the debtor. You said she had a credibility problem? Yes, Judge King. But I had a little bit of a credibility problem when her testimony conflicted with things that are written in the schedules and when she didn't have a lot of memory of things that happened. Okay. So the bankruptcy court properly weighed the evidence and assessed the credibility of the witnesses in this case and the trustee's position that it would be clear error not to uphold those findings of facts and the findings of facts that were duly noted by the district court in adopting the findings of the facts. Did the district court specifically say that finding of fact number 4 was clearly erroneous? It did not, Your Honor. It actually adopted finding of fact number 4. It adopted finding of fact number 4. Well, it adopted findings of facts 1 through 14, but not the entirety of the facts. I believe the findings of the facts of the bankruptcy court. But it didn't say. My question was, did it find finding of fact number 4 to be clear error? And you say it did not. It did not. That's correct, Your Honor. And I thought you said it adopted it. It adopted 1 through 14. That's correct. All right. Well, Judge Moss, if the court had found number 4 clear error, it would not have adopted 1 through 14. Correct. Right. Right. You got that. My apologies, Your Honor. Okay. Thank you very much. Thank you for your time. Your time has expired. Yes, ma'am. Where is the initial note? Ma'am? Where is the initial note? The initial note? The notes were not made up of the record. The notes were not presented at trial, Your Honor. Well, if the note's not in evidence, how can you prevail under a clear and convincing standard? Well, there was testimony, Your Honor. There was testimony from Greg Fisk, Vice President at Greer State Bank at the time of the trial. However, he was the lender bank, employee at the bank that Mr. Fisker dealt with originally on the original loan through BB&T that was 100% financed, that purchased this piece of property on Highway 101 in Greer, South Carolina. That property at that time was completely undeveloped. Mr. Fisker. You know, I'm sure that's all interesting. But what I'm mostly interested in is what the note says. And the best evidence of what the note says is the note. Yes, ma'am. However, the testimony of Greg Fisk at the time said the notes, all the notes, the original, beginning with the original note to BB&T was put in the name of Architectural Glass. Architectural Glass was solely responsible for the day on this property. Architectural Glass made every payment or made the complete every payment on the original note to BB&T. That, Your Honor, is that testimony is on the appendix 1361 through 1362. Is there any evidence in this record who actually paid the money to buy the property? Yes, sir. It was the defendant, Architectural Glass. Where's that? You sure that evidence is in there? I don't think so. I never saw it. That evidence was in by the testimony of Mr. Pfister. He said, I took money and bought the property. Is that what he said? He purchased the property. He approached BB&T. Right. He did that. You sure that's testimony? Let me say this and we can move on. I never saw any testimony about who actually purchased the property. Yes. Well, it was testimony from Mr. Pfister that the corporation paid every mortgage and every note. You know what? That doesn't necessarily mean it. Couldn't he buy it? Couldn't he have bought the property, say, for instance, personally, paid the money out of his pocket and so this is not a purchased money mortgage, but then they take out a mortgage and pay him back? I mean, just because you have a mortgage on the property or a note on the property and it's paid, that didn't necessarily tell you who purchased the property in the first instance. Yes. Yes, Your Honor. Through the testimony, there was everything that was testified to, the documents that were entered into evidence, which there was a general transaction ledger from Architectural Glass Construction, Inc., who had their own separate checking account, own separate account. That general ledger detailed payments to, and you can track it, and that's what was entered into evidence, and there was no dispute as to that, was the payments to BB&T on the original. You're missing the point, though. Making note payments is not the same as, is there a ledger entry saying, who owned the property before the purchase? Who owned it? Who? Who owned the property? Who did they buy the property from? They bought the property from. Do you know? It was a corporate, not a, it was a. Is there any ledger entry showing Architectural Glass writing a check to them for the purchase price? No, sir, John. It was a, it was 100%. It was a loan. It was a note financed from BB&T, 100% finance. Do we know, does the record indicate that was a purchase money mortgage or note? Doesn't indicate. I couldn't find that. We don't have a note. Even if you don't have the note, is there any testimony about that? There was testimony that the appellate corporate, the telecorporate, affiliate corporation paid all the. What is the testimony in this record about what? Miss Easter knew or did about this property or her role in acquiring it, paying for it, or anything. What she had, what did she have to do with this property? Mr. Feaster, Mr. Feaster had nothing to do with this property. Your Honor. In effect, the only thing that she had a deed in her name, he had a deed in the bankruptcy judge. She owned it. That was finding it back. Number four says that was adopted by the district judge. She owned it. Now, what did she have to do with it? Your Honor, she, she had, she had nothing to do with it. Well, that I'm, well, what do you do about finding a fact number four? Your Honor, if the property was titled and owned in debtors and sisters, individual name. And that finding, in fact, was adopted by the district court. Yes, sir. Your Honor. So. How's your answer? Anything other than the fact she owned it? Well, the fact that. You have to say that the bankruptcy court erred. Yes. And the district court erred. Yes, the bankruptcy court erred, Your Honor. We believe that the district court did not erred. And we're correct in the finding. Well, then what did it mean when adopted the finding of fact? Yes, and they, they did adopt the findings of fact on the bankruptcy court. Now, the bankruptcy and the findings of fact, pretty much, now that, and it comes down to title and all. And again, as the court had noted earlier in opposing the trustee's argument, argument, there was no, nothing in the record. It was, it dealt with title. There was nothing in the record, any testimony as to ownership of the property. It was you titled this property in these, in this manner for tax advantages. If she had owned it, if she had owned it on that day, by way of title, would that change your argument? If she had, if she had, If title is indicative of ownership on the day that the property was dated, does that change your argument? You don't want to say that first, If you could ask that again, Your Honor, I would, I, Could a person own property and still there be a resulting trust in favor of another person under South Carolina law? They hold it in trust, Your Honor. They have, they have, they, a very legal title. They're the owner of, it's, it's, Under South Carolina law, is title indicative of ownership? No, sir. Are you sure about that? I'm just asking, are you sure about that? I'm just wondering, does the, I was asking the question because I couldn't find any evidence that she had any ownership function or rights other than mere title. Yes. It could be that the courts, first of all, the district court's decision is entirely inconsistent with accepting full ownership, no resulting trust. You can't read the district court decision any differently than that, can you? He said, I know what the bankruptcy court found, but there is a resulting trust under these facts, correct? Yes. Yes. And so I'm asking you now, does the fact there might be ownership in party A necessarily defeat a resulting trust in favor of party B? No, sir, Your Honor. But who has the burden of proving? You do, by clear and convincing evidence. Yes. Yes, ma'am. Well, there you go. Except that, isn't there, if one person purchases the property and is deeded to another, doesn't that raise the presumption of a resulting trust? Yes, sir. Yes, sir. So what do we do with that? You don't understand because it looks, from everything you can tell, the company bought this, they prepared the plat for the company, they paid for, they prepared the plat for the property, they contracted for the property, they paid for the property, it's their property and everybody knew it, and that's why you have to understand that somehow people think it's not your property. Is that the point? Well, that's the idea. That's not the point. Yes, sir, it is. Yes, sir, Your Honor. We can call this on the date of acquisition, don't we? On the date of, the intent of the, yes, but you look at the intent of the defendant corporation. Everything, the date of acquisition. Did AGC pay any money on the date of acquisition? It was a hundred percent, but the note was, I thought that the evidence was undisputed, that it didn't pay anything until afterwards. Well, there was nothing put down on the property. No, ma'am, nothing was put down, it was, the thing, so we have title in the individuals and no money paid out by you on the day of acquisition, and we're looking at 10th, intent on the day of acquisition. Are you saying that there was no money paid out on the date of acquisition? Now, it's a question of whether or not the record reflects that. By the way, where do you get property and you don't pay for it? I want to get in one of those closings myself. BB&T paid all the money. BB&T cut a check consistent with financing the property. Yes. That was in the name of Architectural Glass Construction, didn't Architectural Glass pay for every penny on that? They paid every penny on that. It was titled in the name of the debtor and her husband, wasn't it? The title was in the debtor and her husband for tax evasion. So, the loan was made to the debtor and her husband. No, sir, the loan was made to Architectural Glass Construction Incorporated. Isn't the argument here that every loan, that initial loan and every subsequent loan, the loan, the note itself, is always made to Architectural Glass? Yes, that's correct. But since the property had been titled in the woman's name, she also had to be on the mortgage. That's right. Because you had to have that property owned, the argument is, owned by Architectural Glass, but yet titled for other reasons not to do with real ownership. In her name, she always had to sign the mortgage as well. That's right, Your Honor. She effectively just had to show up. All she did in regards to this property was if there was a closing or there was a mortgage, she or her husband told her to come down to the mortgage to the attorney's office and she just showed up. That's all she did. She didn't have anything to do. She wasn't a guarantor on that, on those notes. She didn't make any payments toward the notes. She wasn't a member. She wasn't an employee of the corporation. Isn't it pretty clear that she just showed up and honestly just did what her husband said? No offense. She just said, well, actually, I think he said, I told her to sign the deed. Her testimony really is. She didn't testify at trial, did she? Yes. She did? I just thought it was deposition testimony. She just goes, I didn't really know anything about it. I just sort of did what I was told. Yes. Yes, Your Honor. That was it. Mr. Pfister. What you're saying is 180 degrees from what the bankruptcy court found. Right? Yes. It's 180 degrees from what the district court found. Yes. For us to agree with you, we got a fine. What you're saying is the fact. Well, no, sir, Your Honor, I think the fact is... We know what business we got to do finding facts. Is it 180 degrees different if the bankruptcy court took title to mean ownership? Did the bankruptcy court or the district court draw any distinction whatsoever between title and ownership in their findings? The district court, Your Honor? Either of them. I ask you, either of them. Well, I think... And, Your Honor, again, the facts were reviewed for clear error. The decisions of law de novo. I believe in the... The bankruptcy court, I believe the... We review this thing de novo. Yes. And we review what the district court did de novo. We review what the bankruptcy court did de novo, but we defer to the bankruptcy court on its findings of fact and review those for clear error. Is that correct? Yes, sir, Your Honor. Okay. And I would say, again, that... You got to convince us that paragraph 4 of the findings of fact is wrong. Yes, sir. In the testimony... Don't you have to do that? Yes, sir. Yes, sir. And, Your Honor, I would note that the findings of fact in paragraph 4 of the bankruptcy judgment said title and own. That is clear error because there's no evidence in the record that there was any ownership interest that was discussed or transferred when they went to the CPA and the CPA said for tax advantages or tax purposes it may be better to be titled in this name, in the individual's name. I'm going to ask you this question one more time. Does ownership by Party A necessarily defeat a resulting trust of Party B under South Carolina law? I don't know the answer for sure, but I suspect I know what it is. Does it? No, sir. The problem you have is you're being asked questions about the fact that two courts appear to have said that Fisker owned the property. Owned it. And so the question is if she owned it, could there still be a resulting trust? Yes, sir, Your Honor. I think... Did the district court think that? Yes. Because the district court... If the district court did find she owned it, the district court didn't find that that ownership, find the fact or not, changed the conclusion of law, did it? Didn't the district court find a resulting trust? Yes. They also found pursuant to 541D that when you look at legal and equitable interest, that the equitable owner of this property was Architectural Glass Fink. Now, she may have owned... She had bare legal title. The debtor had bare legal title, which in accordance with the Mid-Atlantic case and other cases, that had no value. Okay, let's... I'm sorry. No, no, no. I take your position to be bare legal title. But if we assume that the courts were correct and she owned it, she didn't have bare legal title, she owned it, she had any kind of title you want to do, she had enough title to get tax advantages because of it. Then do you lose? You have to go with bare legal title. Is that right? Is that your position? Well, that's... Yes, ma'am. That's been our position this whole... If she owned it, we think that... If, contrary to your position, she actually did own the property, then you would recognize that you lose. Is that right? If she had just bare legal title, you think you win. Yes, but if she did own the property, then you go to legal and equitable interest. Under the bankruptcy code, legal... If she had a legal title, if she had a legal title or the legal ownership, what was her equitable interest? She doesn't... Her equitable interest that is not hers does not go into the bankruptcy estate. How do you prove that she had... to defeat her legal title? How do you prove... What do you have to introduce to defeat that interest? Well, I believe the value of what was transferred is always on... 548 is always on the trustee. But, however, in this case, as the district court noted, you gain equity by payment of a purchase price, paying down the mortgage, in this case, improving the property, making improvements. I thought that you had to look at the time of the transfer. You have some law that says you don't. You look at subsequent evidence. You look, and I think in the DeCoy versus DeCoy, they looked... In that case, it dealt with a resulting trust, and they talked about the mother-in-law's title and the name in her daughter-in-law... daughter-in-law to... Isn't there some question that the resulting trust, notwithstanding any determination on the date of the deed, it can result, say, from appreciation of property value or some other factor that changes the property? Isn't that the lowest side of this? But you're making an argument about whether or not she had ownership, whether or not... I took it to be. Whether or not there's a resulting trust, her equitable interest, even if she had legal title on some other theory, her equitable interest is zero anyway. Is that it? Yes. Is that an argument that even if there isn't a result, even if you lose on the resulting trust issue and the court were to say she owned the property because of her title to defeat the resulting trust, you then look at what is her ownership interest worth? And you say it's worth zero. Yes. Or it was not. What was her undivided... The debtor was supposed to transfer as an undivided one-half interest. What is that? I don't think the bankruptcy court really knew what that was or whether that was proven at trial because the fact of the matter is from day one, the debtor, again... But is this argument completely separate than the resulting trust argument? I think there's two arguments. So that would mean it's completely separate from the resulting trust argument? I think when she's talking about an equitable ownership, I mean, obviously, the district court imposed a resulting trust on behalf of the corporation because they were the equitable owner or had an equitable owner of the property on Highway 101. And I think that's clear. I think there was no other evidence in the record that the debtor had any... Stop for a second. Stop for a second. Listen to me very carefully. Yes. If you lose on the question of resulting trust, do you think you still can win that the debtor is entitled to zero value from that property? Yes, sir, Your Honor. And why is that? Because from day one, the debtor had no... She made no payments on that property. That's factual. Your legal argument is she had no... She had zero equitable interest. Yes. So her equitable interest there was valued at zero. That's right. Her legal title for the property was bare legal title, which is zero. The equitable interest in that... The equitable interest lied with the appellant corporation. For instance, this property was bought for $74,000. At the date of 2008, the date of transfer, it was worth $470,000. Mr. Bruce Owens testified the reason for that increase in value was mainly from the result  the actions of Architectural Glass Construction Inc. So it was the corporation that improved the property, made all the payments on the mortgage and the loans. I don't think that's disputed. Nobody disputes that. The bankruptcy judge didn't dispute that, and nor did the district. Is the finding... Okay, I'm going to go back to the resulting trust. Is the finding of intent... Is that a legal or factual question? I think it's next, Your Honor. Okay. Didn't the district court find... The district court find the actual intent of the parties was that the property was Architectural Glasses to be used solely by Architectural Glasses. Yes, sir, Your Honor. What do we do with that in light of the factual finding that the property was titled and owned by Pfister? Can you reconcile those two? I think it's because the review is to know that's not...  How do you reconcile what looks like a factual finding that Pfister owned the property and that it was the intent of the parties that the property be used solely by Architectural Glasses? How do you reconcile those two? You reconcile those two, Your Honor, that's... Again, that's a... It's a mixed question. It's a matter of law, resulting trust, the intent of the parties. The intent of the parties, I believe, from day one was that Architectural Glass was the true owner of this property. Who makes the factual findings in this case? There are three courts in it so far bankruptcy court, district court, and appellate court. Yes. Do appellate courts make factual findings in bankruptcy cases? No, sir, Your Honor. The district court makes factual findings in bankruptcy cases? No, sir. So the factual findings are made by the bankruptcy court? Yes. And here it was after a trial? Yes. Okay. And we defer to those factual findings, the appellate courts do, to the extent that we review them for clear error only? Yes, yes. That's my understanding of the law, too. But the factual finding of the ownership is not inconsistent with the district court's legal conclusion of the intent that the property be Architectural Glass, is it? No, sir. That is, and again, I would note that, again, that number four, the title and ownership, again, title was discussed at the trial. Ownership, the actual ownership was not any testimony in the record to that effect. Thank you, Your Honor. Your Honor, just a few issues to clarify. First, that the intent that must be assessed is that of the purchase state. And critically, I think something to consider is that also the intent on the purchase state was that the debtor would receive benefits that are commensurate with ownership. She intended to receive rent from the corporation. So it's not just that she intended to have the title in her name, but she had an intent for benefits. What did you do with the fact that the district court found it was the actual legal intent of the parties for the property to be used solely by Architectural Glass? What do you do with that finding? With that finding, Your Honor, I think that the South Carolina Resulting Trust jurisprudence requires that you look not at the use, but that you look at intent as to ownership. And it was always the intent that the affilee would use the property. It was always the intent that Architectural Glass would use the property. But it would pay rent to the owners. Yes, Your Honor. And you're saying the rent is evidence of ownership. The fact that you're going to take the highest advantage isn't evidence of ownership. Yes, Your Honor. So there was a benefit that she intended to receive on the purchase date that's commensurate with her intent of ownership. So what was it? Was it a gift from Architectural Glass to her? Your Honor, I would also argue that, correct, the gift presumption, which is a competing presumption of the Resulting Trust could apply. In effect, a gift applies in South Carolina law when you have, for instance, in this case, what is similar to a husband-to-wife transfer. Is your position that it was a gift to her from Architectural Glass? We make that argument, Your Honor. The trustee makes that argument. And so, a gift arises... So she didn't acquire by purchase. She acquired it as a gift. She didn't pay the purchase price, if that's what... She didn't acquire by purchase, did she? By her purchase of it. Correct, Your Honor. You don't make that claim, do you? I do not, Your Honor. You don't claim that she bought the property. That's not the claim, Your Honor. It was the intent of the property... You don't claim she bought the property. I do not. But you... So your theory, then, is it was a gift to her? Well, that's one analysis to look at. What else is it, then? The other... You stumbled upon it? No, the other, Your Honor, is that we rebut by definite clear, unequivocal, and convincing evidence the imposition of Resulting Trust in this case. I mentioned that, though, but I said, how she got it. The Resulting Trust is how she loses it. I said, how did she get it on the day she acquired the title? She didn't pay. You just said, and I think you're right, nothing in this record suggests she in any way purchased it. So it was a gift to her? Well, we would argue, Your Honor, correct, that it can be seen as a gift as well. Does a gift give you tax advantages? If she receives a gift, how does that work into the tax advantages that she says she was getting based on what the CPA said? I'm not entirely certain, Your Honor, how that would play in. Is your theory built on the fact that this was a gift to her? It's not built, I think that's another argument that when you look at the facts. Listen, tell me your theory of this case. How did she acquire ownership? She acquires, literally, she acquires ownership by taking title. Right, and how did she take that? What did she do to get that title? She didn't pay for it at all, right? Correct. I thought of gift. Is there another way you can get it? I mean, there might be. You don't make another claim. Your claim is she didn't pay for it, but she got it. So what, therefore, it was a gift to her? It could very well be, but on the intent, on the purchase date, the party has intended, Your Honor, that, well, she signed the mortgage, didn't she? She did sign all the mortgages. That's correct. She signed the mortgage, so she's, she promised to pay the mortgage. That's right, and she let the appellee use the property, and she promised to pay the mortgages. That's a finding of fact there, too. I mean, number three is the loan was secured by a mortgage, signed by the debtor and her husband. Well, is there evidence in this record that the corporation, AP, whatever it is, AGC, Yes, Your Honor. I don't think there's any mystery about this. Well, the argument that I would like to make, if you'll allow me just a moment, is that under South Carolina law, a gift arises, which is a competing presumption to resulting trust when you have a transfer, and the property is paid for by a spouse, conveyance is taken in another spouse's name. We would argue that, the trustee would argue that in this case, it's similar to Windsor Properties versus Dolphin Head Construction Company, that where a husband's wholly owned company transfers. Whenever you get there, your theory of this case is this is a gift to her. Arising by presumption otherwise, your theory to this court is it was a gift to her. Well, I think there are  Yes or no? No, Your Honor. Okay, how did she get it then? She didn't purchase it. She did, in fact, sign a mortgage to secure the note, which is the promise of paying, isn't that right? Correct. Okay, but she didn't sign that until after she acquired the property, right? Correct. But how did she acquire the property, though? She acquired the and what's important for resulting trust I know she was deeded the property, but I mean, you either pay for property or it's gifted to you, how else do you get it? Well, in this case, I think I'm misunderstanding your question here, and what I'm trying to convey is that let me make it clear, how did she acquire the property? Let me ask you one, did she purchase it in any way whatsoever? No, she did not, Your Honor. Okay, now the next question is, then how did she acquire it? Was it by gift? It was by rebutting the presumption of a resulting trust. That doesn't rebut anything. That just re I mean, that doesn't tell how she gets it, that just prevents her from keeping what she has. Correct. So, okay, so in I guess not necessarily assessing the exact legalities of the elements to impose a gift and to rebut the resulting trust. Correct. Right, and so in that vein, in that vein, she didn't pay a purchase price, but the intent on the date was that she would receive ownership benefits by way of by way of, sure, you could argue it's a gift. Yes, Your Honor. Well, do you, I'm not arguing anything, do you argue it's anything other than a gift? Well, she didn't, if we're defining gift as payment of purchase price, or if not, purchase price. Are you arguing that she attained attained in any way other than a gift? I'm, the facts of the matter are that in the record, she didn't pay the mortgage price, so, therefore, you could argue that it was a gift to, and you can, the trustee will say, Let me ask you what I could argue. Yes, Your Honor. What you argued. Yes, Your Honor. It was, so if, Just listen, let's just start again. Tell me, don't talk to me about the intent at the time of the date. This is a separate question. Tell me your theory of this case. How is it that she came to own it on that day? What did she do to own it? Did she do something actually to get it, or did somebody just gift it to her, or is there another alternative that I'm not thinking about? She, Your Honor, she met with her, the record indicates she met with the CPA along with her husband, and that was nothing to do with how she got it. I'm just talking about how. Right, and so, therefore, who signed the note? The note was signed by Architectural Glass. It was personally guaranteed by Mr. Pfister. She never signed the note as a guarantee or as the note itself, did she? Correct, Judge. Now, why is that not in the record? It, well, Your Honor, there's testimony of that effect by the debtor's husband in the record. But you don't dispute that, do you? I do not dispute that, and if a gift is imposed, I might add that the burden shifts to the appellee to rebut the gift presumption by definite, clear, unequivocal, and convincing evidence under Legendre v. South Carolina Tax Commission. A few, just more points to make here. The deed is not contract for sale, Your Honor. Judge Shedd, it's record of your title. You're trying to convince me of that? That's why I was asking you the one who said it was a contract. I understand. I just want to clarify that. I got you. And also, that the trustee withdraws two arguments in this case that I meant to withdraw earlier, but do not have any bearing on your resulting trust analysis. That we withdraw just simply that the creditors relied on debtor's ownership. Did you, did you, I'm not looking at your brief now. Did you make the argument that the district court is wrong, necessarily wrong, because the final fact that this district owned the property on that date necessarily means the district court could not find a resulting trust? I did make that argument. You did? Your Honor, I did. That is just, it's just, your argument is it's legally impossible for a resulting trust, legally impossible as a matter of law, for a resulting trust to be imposed on a piece of property that someone else owns. No, but the finding wasn't just owns. Right, my argument is that if there's no resulting trust imposed in this case to bifurcate title, the two are, ownership and splitting title by virtue of trust, those two are inextricably linked. You have to have a trust to bifurcate the debtor's interest in this property and so far as resulting trust is not warranted in this case, there is no way in which architectural glass can hold any equitable interest in the property. Based on 1039, based on advice of their accountants, the property was titled and owned in debtor's and feister's individual names. Feister testified that he and debtor were advised that defendants could pay rent for use of the property and debtor and feister could receive tax advantages from this arrangement. But I'm still asking the question, is it your position that a resulting trust as a matter of law cannot result from a situation where another party owns the property? It can't be the law, can it? If it's rebutted by the party's actions. I didn't ask anything about rebutted, I said as a matter of law. Well, the whole thing about resulting trust is it can be rebutted if you have this fair ownership, but what your position is is that hasn't been rebutted here, isn't it? Yes. Well, Your Honor, the position that we take is that we have rebutted the resulting trust. Okay. So, start me over again. Okay. And LeGendre v. Stockholm Tax Commission provides that... Just try and stay with ordinary English. Try to explain this to an eighth grader. Go there and tell me why. Yes, Your Honor. Well, resulting trust is a matter of fact and not of law. It can be it's imposed where you have one party pay a purchase price and for some different reason it's titled in the name of another rebutted by the contrary intention of the parties must arise, if at all, at the time of conveyance. Resulting trust must arise if at all, at the time of conveyance of the piece of land. In this case, the evidence in the record and the findings of facts were not clear error. They support the rebuttal of the resulting trust. Because the resulting trust does not exist to give equitable title to the appellee in this case. The debtor necessarily transferred to the appellee on December 31, an entire full undivided one-half interest in the property. She asked that the appellee must prove that there's a resulting trust in this case to have received... Is she entitled to all the appreciation that Architectural Glass did to the property? Well, Your Honor, the bankruptcy court found this fact that she had substantial equity and... No, that's not what I asked. Is she entitled... The bankruptcy court found that. But the property was improved, correct? Correct. At the sole expense of Architectural Glass or did they gift her with that too? Well, the majority of the consideration was actually paid by the banks to which Architectural Glass became liable on the commercial promissory notes that issued. It didn't actually pay down. You're not really making... You're not really making... That's the old style that if you have a mortgage you don't own your house, the bank owns it. You're not making that argument, are you? I thought there actually was evidence here that there... that there... that it had been not appreciation but mostly just use of loans and then paying back. Yes, Judge Mott. So, properties... Buildings were put up on that property, weren't they? I'm sorry? Buildings were put on this property? There were two buildings, yes, sir. After the purchase date. Correct. But they borrowed money to build the building. Yes, Your Honor. And there's... I thought there was evidence that the buildings weren't worth much more than the loans taken out to pay them. How much is the property worth now or when you were in front of the bankruptcy court? How much was it worth? Well, when we were in front of the bankruptcy court the value declined and I wasn't... How much was it worth? I can't tell you exactly how much it was worth at that point in time. In 2011 it was... In her interest it was $43,500. I thought it was like worth $70,000. At the time of the transfer the property was worth $470,000. It was appraised on December 5, 2008. Transfer occurred on December 31, 2008. So within that month it was valued at $470,000. The mortgages outstanding on the property were in the amount of $304,000. So the equity existing in the property at the time of the transfer was $166,000. One-half interest of that is $83,000. So the debtor received the bankruptcy court awarded, in my opinion, a conservative estimate based on just simply splitting the equity, $83,000 versus the award $43,500. I thought you'd said earlier that all this comes down to whether finding a fact number four made by the bankruptcy court was clearly erroneous, which was adopted in hack verba, word for word, rewritten in the findings of fact of the district court. Everything comes down to whether that's clearly erroneous. Now is that point that you said earlier that was it, is that point at all consistent with that long answer you gave to Judge Motz about what your position is? I think so. You think it is different or not different? No, I think my points are consistent. I think they're consistent. So it still all comes down to finding a fact number four. It does. All it is is finding a fact number four. We could sum it up in five or six words. Correct. Finding a fact number four, correct. Yes, Your Honor. That's what's before us in these issues. That's all we've got to say is six words. Right? Yes, Your Honor. In your position. Now Mr. Ipsch doesn't agree with any of it. That's correct. We understand that. Yes, Your Honor. Thank you for your time. Let me ask this of you. You think finding a fact adopted totally necessarily means there can't be a result in the trust? A legal determination as to intent on a legal trust, you think that finding a fact four necessarily beyond all question precludes a finding of a result in trust? Well, in this case... Yes or no? Yes. And I'll explain that in this case the bankruptcy court got it right. The district court first found that... Okay, I got you. Thank you. Thank you, Your Honor. I think if we keep asking questions, you're going to answer his that way. Mine that way. Thank you. Thank you for your time, Your Honor. Thank you. We will come down and brief the lawyers. We'll ask the clerk to return to court and we'll come down and brief the lawyers. This honorable court stands adjourned until tomorrow morning at 8.30. God save the United States and this honorable court.
judges: Diana Gribbon Motz, Robert B. King, Dennis W. Shedd